## 10193

### CARSON v. McCASKILL.

#### (99 S. E. 108.)

1. EVIDENCE—RES GESTAE—DECLARATIONS OF GRANTOR.—In some circumstances a grantor's declarations may be admitted as against interest, and in some circumstances in favor of interest, as part of the *res gestae.*

2. EVIDENCE — PAROL EVIDENCE AFFECTING DEED — DECLARATIONS OF GRANTOR.—Parol testimony whether of declarations, acts, or of the *res gestae,* is inadmissible to vary the terms of a written instrument; a rule applying to parol testimony of declarations of a grantor varying his deed.

3. EVIDENCE — PAROL EVIDENCE — EXPLANATION OF AMBIGUITY.— When an instrument is ambiguous, parol testimony is admissible to remove the ambiguity, but, except in cases of fraud, accident, or mistake, is admitted subject to the limitation that it must be consistent with the instrument, and so must not tend to contradict or vary its terms.

4. EVIDENCE—PAROL EVIDENCE—DECLARATION VARYING DEED—INTEN-
TION.—In action for partition, declarations of a defendant, plaintiffs'
grantor, whose deed by its terms conveyed all his interest in the
home tract of his father, that he intended to convey all his interest
in his father's estate, a different thing, *held* inadmissible, though
parol testimony was admissible to show what land was included in
his father's home tract, and also all circumstances surrounding the
parties.

5. EVIDENCE — DEEDS — INTENTION — DESCRIPTION OF PROPERTY.—In an
action to partition land conveyed by a defendant to plaintiffs, deed
executed subsequently by the defendant to a bank *held* admissible as
tending to show what the defendant had intended to convey pre-
viously to plaintiffs.

Before SMITH, J., Kershaw, January, 1918.    Affirmed.

Action by J. M. Carson and others against Mary B.
McCaskill, the Bank of Bethune, and another.   From judg-
ment for defendant, Bank, plaintiffs appeal.

*Messrs. E. D. Blakeney* and *Kirkland & Kirkland,* for
appellants, submit: *The declarations of K. D. McCaskill,
the former owner and occupant of the lands in controversy,
were admissible to explain the ambiguity in the deed, and to
indicate the extent of the land intended by the description—
such declarations having been made by him in making a con-
veyance of his lands:* 10 R. C. L., p. 974, p. 983; 125 Mass.
88; 28 A. R. 209; 100 S. C. 4; 68 S. C. 369, and cases
therein cited; 68 S. C. 310, 311; 47 S. E. 384; 95 S. C.
306; 13 S. C. L. 241; 86 S. C. 358; 16 S. C. 135; 48 S. C.
472; (9 Rich. L.) 43 S. C. L. 50.    *The declarations were
admissible as a part of the res gestae:* 68 S. C. 369; 100 S.
C. 1; 86 S. C. 358; 30 Am. D. 591; 31 Am. D. 633; 15
N. H. 546; 23 Me. 234; 204 Mass. 71; 26 L. R. A. (N. S.)
814.    *The declarations of an owner of land after parting
with possession are not competent:* 79 S. C. 54; 43 S. C.
370; (9 Rich. L.) 43 S. C. L. 50.

*Messrs. Tatum & Jennings,* for respondent, submit: *That
the cases cited by appellants as to the admissibility of the
declarations here are inapplicable because they relate to*

*cases where the suit is between the original parties. The declarations were inadmissible:* 16 Cyc. 1170; 60 Wis. 110; 18 N. W. 730; 16 Cyc. 1173; 29 S. C. 292; 29 S. C. 421; 16 S. C. 421; 18 S. C. 494; 48 S. C. 485; 53 S. C. 52; 95 S. C. 139; 104 S. C. 382. *The admission of incompetent testimony that could not have affected the result is not sufficient ground for reversing the judgment:* 22 S. C. 133. *What constitutes the adjoining land called for (as a boundary) is a question for the Court: its actual location is question for the jury:* 3 Rich. L. 4; 2 Mill. Const. 98. *Where the lands within the boundaries called for can be enjoyed the matter of acreage is always rejected:* 2 Mill. Const. 98; 41 S. C. 198. *Appellants were careless in not ascertaining and inserting an accurate description in their deed, and they are estopped as against another party (the respondent here):* 92 S. C. 329; 100 S. C. 452.

April 23, 1919.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This action was brought for the partition of a tract of land between plaintiffs and the McCaskill defendants. The defendant, Bank of Bethune, was made a party, on the ground that it was in possession of a part of the tract, claiming some interest therein. The bank set up title in severalty to a part of the tract. The issues between all the parties were settled, except those between plaintiffs and the bank, both of whom claim under deed from K. D. McCaskill. On November 17, 1914, he conveyed to plaintiffs his interest in a tract described as follows:

"All my interest in tract No. 1, containing 606 acres, more or less, bounded north by lands of J. T. Hough and J. M. Carson, south by lands of the estate of Kenneth McCaskill, deceased, east by lands of J. T. Hough, west by lands of S. C. and A. A. West and others. The above described tract comprises all my interest in the home tract of my deceased father, John Daniel McCaskill."

Six days thereafter, on November 23, 1914, he conveyed to the bank his interest in a tract described as follows:

"All my interest in 300 acres, more or less, known as the old Kenneth McCaskill place, bounded north by the home place formerly of J. D. McCaskill, deceased, east by lands formerly of R. M. Cooper, south by Mrs. N. K. Price and Wire Road, and west by Mrs. McNeely and lands formerly of B. J. Campbell."

The contest between plaintiffs and the bank grew out of the ambiguity in the description of the southern boundary of the land covered by plaintiffs' deed, and the meaning of the words, "the home tract of my deceased father."

A brief statement of facts will show how these ambiguities arose. Kenneth McCaskill, who was the grantor's grandfather, had a large body of land and nine children, among them a son named John, who was grantor's father. In 1878 Kenneth conveyed to John, by way of advancement, a tract of 500 acres which was cut off the northern end of his tract. John lived on that tract until he died, and it is admittedly covered by the description in plaintiffs' deed. Kenneth died in 1878, and the remainder of his land was divided into eight tracts for division amongst his other heirs, John taking no part, as he had been fully advanced. In this division a tract of 300 acres lying adjacent to and south of John's tract fell to Allen, who died some years afterwards, and in 1902 John acquired title thereto from Allen's heirs. This is the land in dispute. The tract immediately south of Allen's fell to another of Kenneth's heirs, and, at date of plaintiffs' deed, was owned by Mrs. Nannie K. Price. John died in 1907, leaving four heirs, the defendants, Mary and Christine, Mrs. Nannie K. Price, and K. D. McCaskill, the grantor of plaintiffs and the bank. Mrs. Price conveyed her interest in her father's estate to her brother, K. D. McCaskill; so that at date of his deeds to plaintiffs and

the bank he owned a half interest in the estate of his father—one-fourth by inheritance and one-fourth by purchase.

From this statement it appears that the description of the southern boundary in plaintiffs' deed as "lands of the estate of Kenneth McCaskill." is misleading, because at that date neither the lands south of the 500-acre tract (which had been conveyed to John by Kenneth) nor those south of the 300-acre tract (which John had acquired from Allen's heirs) were lands of the estate of Kenneth, though both had formerly been such. But at that time the lands south of the 500-acre tract were lands of the estate of John, and had been lands of the estate of Allen after they had been lands of the estate of Kenneth; and the lands south of the 300-acre tract were lands of Mrs. Nannie K. Price, though these, too, had formerly been lands of the estate of Kenneth.

It appears, also, that the use of the words "the home tract of my deceased father" raised another ambiguity, since they may be interpreted as intending to refer to the original home tract of 500 acres, or to the home tract as increased by the addition of the 300-acre tract acquired from Allen's heirs.

Plaintiffs contended that the call for "lands of the estate of Kenneth McCaskill" as the boundary of the tract described in their deed covered the 300-acre tract, as that call was as well satisfied by referring it to the lands of Mrs. Price, which had formerly been lands of the estate of Kenneth McCaskill, as to the 300-acre tract, which also had formerly been lands of that estate, and that the words "the home tract of my deceased father" included the 300-acre tract, because that tract had been added to the original home tract and was a part of it at the death of his father, even though it had been acquired only five years before his death.

Although their grantor was present at the trial, plaintiffs sought to establish his intention to convey to them the 300-

acre tract by proving his acts and declarations before and at the time of the execution of their deed. One of them, Mr. Ingram, testified in substance as follows:

"Before deed was made, McCaskill went over the land with me and pointed out to me the land now claimed by the bank as a part of what he was conveying to us. I bought everything from him, except his interest in Kenneth McCaskill's home place. That did not join the land we bought. In the office of Blakeney & Williams (the attorneys in whose office the deed was prepared and executed), he stated that he was selling his entire interest in his father's estate."

On cross-examination, he said:

"It was the understanding that I was buying only the interest in his home place. I notice the deed only called for the home tract. I suppose it got in there by error. Something must have been said about it somewhere for the home tract to have gotten in the deed. He showed where his father's old home was."

Mr. Carson, another of the plaintiffs, testified:

"Ingram told me, in the presence of McCaskill, he had bought all the land that McCaskill had inherited from his father, and everything, except one-fourth interest in his grandfather's estate, which was a mile or two away from this tract. We then asked Mr. Williams to draw the deed, and gave about the same description as I have just given. He stated there that he was conveying the entire interest that he inherited from his father. He stated that the home tract in the deed there was what he inherited from his father. We knew nothing about the home tract of 40 years ago, but the home tract of his father at his death. We understood it was what his father had at his death."

Mr. Williams, the attorney who prepared the deed, testified:

"Ingram told McCaskill he wanted him to convey all the land pointed out the day before. I drew the deed with boundaries that McCaskill and Ingram agreed on as being

the correct boundaries of the land pointed out the day before. McCaskill stated that he conveyed all the property he then owned, that he got from the estate of his father, except his interest in the home place of Kenneth McCaskill. He further stated that the property conveyed covered part of the estate of Kenneth McCaskill which he derived through his father, but this was separate from the home tract of Kenneth McCaskill, which did not touch the land conveyed. The boundaries in the deed were given to me as including all that land; it being understood that any land inherited by him through his father which his father might have gotten from his father (Kenneth McCaskill) was included."

Mr. Blakeney, the other member of the firm, testified:

"McCaskill stated that he was conveying all of his interest in the lands of his father, and that he had pointed out the lines to Mr. Ingram the day before."

Several witnesses testified for the bank that the tract of 500 acres conveyed by Kenneth to John, on which John lived and died, was known as his home tract, and the lands south of that tract were known as lands of the estate of Kenneth McCaskill; and there was no testimony to the contrary, except an inference that might be drawn from the testimony of Mr. Ingram that the 300-acre tract was pointed out to him by McCaskill as part of the home tract, and from the testimony of Mr. Carson that plaintiffs bought with reference to the home tract at the death of John, and not the home tract of 20 or 40 years before. But neither of these witnesses, nor any other, testified that any member of the family, or any one in the community, ever spoke or thought of the 300-acre tract as a part of John's home tract. On the contrary, the testimony is undisputed that the 300-acre tract was generally known and referred to as "land of the estate of Kenneth McCaskill," though it had been many years since it had been a part of that estate.

Mr. Bethune, the president of the bank, testified that he knew of the deed to plaintiffs, and investigated to ascertain

what lands it included; that he saw a copy of their deed, and, from the description there given, was satisfied that it did not cover the 300-acre tract, because that was not a part of the home tract; that he knew the limits of the home tract, having surveyed it, when it was conveyed to John by Kenneth, and that he knew also the limits of the estate lands of Kenneth, as he had surveyed those lands for division among Kenneth's heirs; that he practiced surveying for 35 or 40 years before he became a banker.

Mr. Yarborough, the vice president of the bank, testified that he went to Mr. Carson, one of the plaintiffs, and asked him what lands they had bought from McCaskill, and he replied that they had bought his interest in the Bay tract, the Campbell tract, and the home tract; that, relying upon that information, as well as the description in the deed, and what McCaskill told them, the bank bought his interest in the 300-acre tract.

It appears that the 300-acre tract is bounded on the east by lands formerly of Cooper, now owned by Ingram and Lancy, and that J. T. Hough, whose lands are given as the eastern boundary of the tract described in plaintiffs' deed, owns no land east of the 300-acre tract; also that the western boundary of the 300-acre tract is lands of McNeely and lands formerly of Campbell; and that these lands do not lie west of the tract described in plaintiffs' deed.

Mr. Carson testified in reply that he told Mr. Yarborough that plaintiffs had bought all the land McCaskill had, except his interest in his grandfather's estate, but that he would not dispute what Mr. Yarborough had said as to the conversation, because what he (Carson) said meant about the same thing.

Upon this testimony, except the declarations of McCaskill, which were excluded as hearsay, the Court found for the bank, and gave judgment accordingly. Plaintiffs assign

error in the exclusion of his declaration as hearsay, and con
tend that they were competent, because they were a part of
the *res gestae.*

The declarations were properly excluded for the reason
given, and also because they tended to vary the deed.
In some circumstances a grantor's declarations may
be admitted as against interest, and in some circum-
stances in favor of it, as part of the *res gestae.*

But a paramount rule is that parol testimony, whether of
declarations, acts, or of the *res gestae,* is inadmissible to
vary the terms of a written instrument. When an instru-
ment is ambiguous, parol testimony is admissible to
remove the ambiguity; but, except in cases of fraud,
accident, or mistake, it is always admitted for that
purpose, subject to the limitation that it must be consistent
with the instrument, and, therefore, that it must not tend
to contradict or vary its terms. *South Carolina Society v.
Johnson,* 1 McCord 41, 10 Am. Dec. 644; *Falconer v. Gar-
rison,* 1 McCord 209; *Milling v. Crankfield,* 1 McCord 258;
*Barkley v. Barkley,* 3 McCord 269; *Railway v. Seigler,* 24
S. C. 124, 129; *Jones v. Quattlebaum,* 31 S. C. 606, 9 S. E.
982, 10 R. C. L. 1075, 1076.

Examination of the excluded declarations which we have
set out for the purpose of elucidating the ground of our
decision shows that their purport is, not merely to explain
or remove the ambiguities in the deed, but to make it
speak a different language; in other words, to vary
its terms. By the terms of the deed, the grantor con-
veyed all his interest in the home tract of his father. By
his declarations offered he intended to convey all his interest
in his father's estate, which is a very different thing from
what he said in the deed. Again, by the testimony of some
of the witnesses, he intended to convey all the interest which
he inherited from his father, and that is still a different
thing. That would not have included the interest which he
purchased from his sister. All of which shows the danger

of departing from the rule that you cannot vary by parol what 'the parties have solemnly put down in writing.

Under the rule and in harmony with it, parol testimony was admissible to show what land was included in the home tract of grantor's father, and also to show all the facts and circumstances surrounding the parties, so that the Court might read the description in the light of the circumstances, and determine what was meant by "lands of the estate of Kenneth McCaskill," and locate the southern boundary intended. All the competent testimony that was offered upon either of these points was admitted and considered; and the Court, in a very elaborate and well reasoned opinion, reached the conclusion that the home tract did not include the 300-acre tract, and, therefore, plaintiffs' deed did not include the land claimed by the bank.

The only other assignment of error that has not been disposed of is that the Court considered the deed from McCaskill to the bank as a declaration of McCaskill's intention. In this appellants are in error. The Court expressly stated that it considered the deed only as an act of McCaskill, which tended to show what he intended to convey to plaintiffs. In so doing there was no error. The Court had held, with plaintiffs, that McCaskill's acts in pointing out the land to be conveyed, the boundaries, and the home tract were competent, and excluded only the evidence of his declarations. Suppose he had remained in possession of the 300-acre tract, and had refused to surrender it on demand of plaintiffs; would not that act have been admissible for what it was worth to show his intention? If so, then why not his act in conveying to another and putting him in possession?

Judgment affirmed.

MESSRS. JUSTICES FRASER and GAGE concur.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS did not sit.